**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Liquid Rarity Exchange, LLC, | Case. No. TBD |
|        Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
|   v. | |
| Securitize Holdings, Inc., | **JURY TRIAL DEMANDED** |
|        Defendant. | |

Plaintiff Liquid Rarity Exchange, LLC ("LRE"), by and through its attorneys, Kean Miller LLP and Tucker Ellis LLP, files its complaint against Defendant Securitize, Inc. ("Securitize"), for injunctive relief and damages as follows:

**NATURE OF THE ACTION**

1. LRE alleges, as set forth in detail below, that Securitize has infringed and continues to willfully infringe infringes U.S. Patent No. 10,825,090 ("the '090 patent"), entitled: "Rarity Trading Legacy Protection and Digital Convergence Platform," and U.S. Patent No. 8,015,069 ("the '069 patent"), entitled: "System and Method for Asset Utilization." True and correct copies of the '090 patent and the '069 patent are attached hereto as Exhibits A and B, respectively.

**PARTIES AND JURISDICTION**

2. LRE is a limited liability company organized and existing under the laws of Puerto Rico.

3. Securitize, Inc. is a Delaware corporation with a principal place of business at 100 Pine Street, Suite 125, San Francisco, California 94111. Securitize operates a platform for the issuance, management, and trading of tokenized real-world assets ("RWAs") defined as physical items or financial instruments from the "off-chain" world—such as real estate, government bonds,

1

gold, and art—that are represented as digital tokens on a blockchain, including digital securities, fractionalized ownership interests of rare assets, and related financial instruments.

4.      This action arises under the Patent Act of 1952, 35 U.S.C. §§1 et seq., as amended.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      Personal jurisdiction over Securitize is proper in this District because Securitize is a Delaware corporation and operates an infringing platform accessible to users in this District from which it derives substantial revenue. Securitize's platform enables the issuance, trading, and management of tokenized assets for investors located throughout the United States, including in this District. By intentionally directing these commercial activities at this forum, Securitize has purposefully availed itself of the privilege of conducting business in this District, such that exercising personal jurisdiction over Securitize comports with due process and does not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant is a corporation organized and existing under the laws of the State of Delaware and therefore resides in this District.

## FACTUAL ALLEGATIONS

8.      Since its formation, LRE has been at the forefront of innovation in the virtual trading platform industry.  LRE's platform (rarityx.com) allows for trading, creative collaboration, and curation of assets secured by smart contracts in the blockchain

9.      LRE operates a rarities exchange platform for trading artwork and rarities. LRE also enables creators to turn their favorite artworks and real-world assets into fractionalized and collectible digital assets to share and trade with individuals and other collectors or artists.

10. LRE's innovations have resulted in the issuance of several U.S. patents and several foreign patents, including: U.S. Patent No. 10,825,090 (Rarity Trading Legacy Protection and Digital Convergence Platform); U.S. Patent No. 8,015,069 (System and Method for Asset Utilization); U.S. Patent No. 8,624,727 (Personal Safety Mobile Notification System); U.S. Patent No. 8,665,089 (Personal Safety Mobile Notification System); U.S. Patent No. 8,665,734 (Personal Safety Mobile Notification System); Canadian Patent No. 3,017,969 (Rarity Trading Legacy Protection and Digital Convergence Platform); Spanish Patent No. 2,752,007 (Mobile Asset Security Notification System); and European Patent No. 2875629 (Asset Safety Mobile Notification System). LRE has other U.S. patent applications pending relating to various other aspects of the trading platform, including: U.S. Pat. App. No. 17/086,871; U.S. Pat. App. No. 18/095,867; U.S. Pat. App. No. 15/441,417 and U.S. Pat. App. No. 19/572955. These applications are continuation applications from the '090 patent. LRE has invested substantial resources enforcing and obtaining its patent portfolio. LRE has successfully licensed its patent portfolio to other industry participants and the validity of the LRE patents has been acknowledged by the licensees.

11. Securitize operates its infringing platform at https://securitize.io. Securitize describes itself as a leader in the tokenization of Real-World Assets ("RWAs") and operates a comprehensive end-to-end platform for the issuance, management, and *trading of digital securities representing fractional ownership interests in real-world assets.*

12. Securitize's platform enables issuers and investors to interact, transact, and exchange tokenized assets in a virtual environment. Securitize's own materials describe the platform as a comprehensive end-to-end trading and distribution environment, including issuance,

3

asset servicing, onboarding, and secondary trading via a regulated Alternative Trading System ("ATS").

13. LRE has had multiple communications with Securitize regarding LRE's patent portfolio beginning at least as early as November 10, 2025. *See* Letter dated November 10, 2025 from K. Grady to Carlos Domingo attached hereto as Exhibit C.

14. On January 28, 2026, LRE sent Securitize claim charts demonstrating how the Securitize platform infringes claims of the '090 patent and the '069 patent. *See* Letter dated January 28, 2026 from K. Grady to C. Domingo and claim charts attached as Exhibit D.

### THE PROSECUTION HISTORY OF THE '090 PATENT

15. The '090 patent claims priority to provisional application No. 62,268,281, filed on December 16, 2015.  The application that led to the issuance of '090 patent (No. 15/072,911) was filed on March 17, 2016.  The '090 patent issued on Nov. 2, 2020.  *See* Ex. A.

16. The 090 patent "relates in general to improved trading systems for rarities, and in particular, to the establishment of a trading platform network for rarities with raritymine, online merchandizing convergence, and robo-rarity trading components and/or capabilities."  Ex. A, Col. 1: 19-23.

17. The '090 patent's "architectural design and investment platform empowers the small investor and opens up rarities as investments in the form of fractional shares."  Ex. A, Col. 1: 61-64.

18. The '090 patent inventors recognized that "an effective system for handling the multitude of requirements of tangible rarities assets, if they were to be sold in fractional shares, has not previously been considered.  Furthermore, an effective computer processing platform that

can accommodate the needs and peculiar aspects of rarities and their trading, of the type described herein, is not believed to exist." Ex. A, Col. 3: 11-17.

19.    The '090 patent claims and discloses a trading platform for tangible and intangible "rarities" such as for example, coins, gems, fine art, rare vehicles, investments both securitized and non-securitized.  Ex. A, Col 2: 32-63.

20.    The specification also "provides for unique exchange software, physical tracking and safety mechanisms, unique digital transactional communication and controls, navigation, and other operational guidelines which provide for a robust rarity trading exchange."  Ex. A, Col. 4: 2-6.

21.    The Rarity Trading Platform (RTP) seller-buyer trading platform and software developers' tool-kit includes methods and technologies which encourage rarity trading transparency, legacy process, liquidity, and fairness and legality as herein referenced."  Ex. A, Col. 4: 19-23.

22.    Likewise, the '090 patent discloses a smart, dynamic database, data streaming processor and trading platform which interfaces with and is designed for the unique physical properties of rarities sold to a plurality of investors. Ex. A, Col 8: 35-38.

23.    During prosecution of the '090 patent, the Patent Examiner issued a non-final office action on November 15, 2019, rejecting all of the pending claims. *See* Exhibit E.  The Examiner's analysis focused on prosecution claim 9 (presently patented claim 1), which provided:

> An online merchandising convergence comprising a virtual merchandising mart wherein a virtual three-dimensional depiction of one or more rarity assets included in a raritymine are configured for visualization by sellers and buyers of raritybits in the raritymine.

*Id.* at 3.

5

24.     The Examiner first noted that the claim was directed to a machine, an online merchandising convergence, which was within one of the statutorily allowed categories. *Id*. at 3. But, the Examiner went on to reject the pending claims under the judicial exception to 35 U.S.C. § 101, concluding that the claimed invention was drawn to an abstract idea, certain methods of organizing human activity. *Id.*

25.     The Examiner determined that prosecution claim 9, under its broadest reasonable interpretation, covers performance of the limitations in commercial or legal interactions, namely trading for rarities. *Id*. at 3-4. The Examiner stated that prosecution claim 9 did not recite additional elements that integrated the exception into a practical application. The Examiner concluded that the online merchandising convergence (described as the generic computer component of the invention) is designed to store, retrieve, generate, and transmit data. *Id*. at 4. The Examiner stated that the additional elements of the claim (a virtual merchandising mart, a virtual three-dimensional depiction, and a raritymine) were recited at a high level of generality and amounted to no more than instructions to apply the abstract idea using generic computer components. *Id*. Finally, the Examiner decided that the claim did not recite additional elements that amounted to an inventive concept to transform the abstract idea into a patentable invention.

26.     In response to the office action, on March 16, 2020, the patentee amended claim 9 to provide as follows:

> ~~An online merchandising convergence comprising a~~ <u>A</u> virtual merchandising mart <u>comprising a simulated trading center</u>, wherein a virtual three-dimensional depiction of one or more rarity assets included in a raritymine are configured for visualization by sellers and buyers of raritybits in the raritymine.

*See* Exhibit F at 2.

27.     The key claim terms recited in amended claim 9 (patented claim 1) are defined with particularity in the '090 patent specification. As used in the patent and in this Complaint, the term "rarity assets" refers to tangible and intangible assets, including but not limited to coins, gems, fine art, rare vehicles, and investments both securitized and non-securitized. Ex. A, Col. 2: 32-63. A "raritymine" is defined as a rarity asset, pool of rarity assets, or a rarity classification of assets such as those up for sale, or previously up for sale, and traded on an RTP network. Ex. A, Col. 5: 48-51. "Raritybits" are defined as ownership units for rarity assets in the form of stocks, bonds, percentages, or any other appropriate unit of ownership in the pool of assets comprising the raritymine. Ex. A, Col. 6: 8-15.

28.     In the remarks accompanying the amendment, the patentee responded to the § 101 rejection by noting that, as amended, the claim is directed to a virtual merchandising mart with specific and special attributes and components enabling average individuals to participate in rarity exchanges.  Ex. F at 6.  The patentee explained that the virtual merchandising mart in the claim could be understood as follows:  virtual means temporarily simulated or extended by computer software; merchandising means the planning and promotion of sales by presenting a product to the right market at the proper time, by carrying out organized, skillful advertising, using attractive displays, etc.; and mart means a trading or trade center, building center, or an exposition for the sale of goods. *Id.* at 7.

29.     The patentee further addressed and traversed the notion that claim 9 (and the claims depending from it) could be deemed directed to "certain methods of organizing human activity." Citing *Koninklijke KPN N.V. v. Gemakto M2M*, 942 F.3d 1143 (Fed. Cir. 2019), the patentee argued "the current claims are patent eligible as they do not qualify as merely a mental process performing an abstract idea."  The claims recite multiple elements that "could not, as a practical

matter, be performed in a human's mind even if aided with pen and paper." *Id.* at 7.  Moreover, the patentee noted that simply because an invention related to the subject of commercial trading, that does not mean it falls into the category of the "abstract ideas' exception to patentable subject matter.  The patentee cited *Trading Technologies Int"l v. CQG Inc.*, 675 Fed. Appx. 1001 (Fed. Cir 2017) and noted that the two patents at issue in that case were deemed patent eligible and not limited to an abstract idea even though the patent related to the electronic trading of stocks, bonds, futures, and options. *Id*. at 7.

30.    The patentee explained that the subject of the amended claim is essentially a store involving novel features and aspects of creatively and attractively displaying rarities, including realistic three-dimensional depictions so that they are readily accessible to ordinary people. *Id*. at 8.  The patentee noted that the limitations of a "simulated trading center", "three-dimensional depictions", and "configured for visualization by sellers and buyers" are all specific and well-defined terms that are well-understood by those of ordinary skill in this art and amount to much more than just computer software. *Id*. at 9.  One example of this the patentee pointed to was prosecution claim 32, which provides that the "mart" may include a showcase of collectible vehicles and may involve recreating taking such a vehicle out for a "spin" (action) and feeling the "haptic G-forces on one's shoulder and hip as one takes a tight curve (touch)." *Id*.  These examples provide much more than "mere routine application of "abstract ideas" and additional elements provided at a high-level of generality. *Id*. at 9-10.

31.    Likewise, the patentee pointed out that the terms "raritybits" and "raritymine" are defined with particularity in the specification, are not stated at a high level of generality, and are readily understandable by those skilled in the art. *Id*. at 10.  In light of the totality of the claim elements, the patentee argued that the claim set forth a concrete (albeit simulated) mart which is

8

not merely an abstract idea.  Moreover, the claims recite a new and novel virtual merchandising mart for raritybits/raritymines, which permit their presentation in novel and eye-catching, attractive ways for a much broader audience of sellers and buyers of these rarities, involving three-dimensional presentations in attractive configurations.  *Id*.  The current claims, the patentee argued, are directed to a non-abstract improvement in a remarkably attractive "virtual merchandising mart" for rarities of all kinds and involve much more than "mere methods of organizing human activity" or "mental processes performing an abstract idea."  *Id*.  Accordingly, even if the invention were to be reduced to some core abstract idea, the additional elements (three-dimensional depictions of rarities and their correlation to raritybits/raritymines), when taken as a whole, amount to an inventive set of novel elements that does much more than just routinely apply an abstract idea.

32.    Regarding the dependent claims, the patentee argued that prosecution claim 12, for example, adds multiple potential additional inventive features such as customization based on optimization of buyer-seller traffic, scale, type of asset, rarity value, rarity size, asset popularity, asset demand, information complexity, historical references, search engine, number of fractional share buyers or other analytics.  These provide levels of "vibrancy and unique applications to Applicant's novel and inventive mart beyond just a narrowing of an abstraction.  *Id*. at 11.  Similarly, the patentee noted that prosecution claim 31 adds the element that the depiction "comprises (in combination) a virtual three-dimensional holographic image, action and touch" altogether, which can only be described as a "life-like" simulation of valuable rarities as though they were involved in a "real" art gallery, auto showroom, or auction house.  Then, upon purchase, these rarities can literally be transported to the buyer's own walls or superimposed as holographs into his or her own garage."  *Id*. at 11-12.

33.     Based on the arguments set forth in the applicant's response to the office action, the Patent Examiner issued a notice of allowance, determining that all of the pending claims are patentable under the 35 U.S.C. §101 Alice/Mayo two-step framework.  *See* Ex. G. The Examiner explained:   "Whereas, the claims are directed to an abstract idea of trading for rarities, the additional element of 'a virtual merchandising mart comprising a simulated trading center, wherein a three-dimensional depiction of one or more rarity assets included in a raritymine are configured for visualization by sellers and buyers of raritybits in the raritymine' integrate the abstract idea into a practical application of providing a virtual merchandising mart with a simulated trading center and a virtual three-dimensional depiction of one or more rarity assets." *Id.* at 2. The Examiner further stated that the same reasons for patentability applied to the pending dependent claims.  *Id.*

## COUNT I—INFRINGEMENT OF U.S. PATENT 10,825,090

34.     LRE incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

35.     LRE's analysis of Securitize's platform demonstrates that the platform infringes at least claim 1 of the '090 patent. *See* Exhibit H, Securitize Claim Chart. The claim charts set forth in Exhibit H reflect a preliminary analysis based on publicly available information as of the date of this Complaint, and LRE reserves the right to modify or supplement the claim charts as further information becomes available, including through discovery.

36.     A comparison of the language of claim 1 to the Securitize platform demonstrates that Securitize infringes the patent.

37.     First, the Securitize platform is a virtual merchandising mart expressly designed to serve as a simulated trading center for digital representations of assets, enabling issuers and

10

investors to interact, transact, and exchange tokenized assets in a virtual environment rather than a physical marketplace. Securitize's own materials describe the platform as a comprehensive end-to-end trading and distribution environment, including issuance, asset servicing, onboarding, and secondary trading via a regulated alternative trading system (ATS), which constitutes a simulated trading center. *See* Exhibit H-1, Securitize Investor Powerpoint.

38.     Second, Securitize expressly states that tokenization "brings global finance on-chain and enables digital representations of traditional investments." *Id*. at 12. These digital representations are virtual depictions of real-world assets within the platform environment. Upon information and belief, such digital representations include three-dimensional visualizations consistent with industry practice and the claimed limitation. Furthermore, Securitize's investor-facing application interface presents offerings together with virtual depictions of the underlying real-world assets.

39.     By way of non-limiting example, the below depicted gallery view exhibits spatial composition and multiple viewpoints consistent with a digitally rendered or virtualized representation.





40.     The screenshot above is a video screenshot from Winston Artory Group's platform, which utilizes the securitize Platform. *See* Exhibit H-2 at 4 – https://www.wag-art.com/services/collection-data-service (video link available on webpage).

41.     Additionally, Securitize is widely integrated with the digital asset ecosystem, including blockchains, custodians, Decentralized Finance protocols (autonomous, open-source financial programs built on smart contracts and blockchain networks), and on-chain infrastructures that adopt visualization and representation of digital assets, including three-dimensional asset depictions.

42.     Upon information and belief, Securitize and/or one or more of its integrated platform partners provide three-dimensional digital representations of assets. These integrations include various partners including Ethereum, Fireblocks, Anchorage Digital, and other blockchain-native infrastructure providers that are capable of, and commonly used for, rendering, visualizing, and interacting with digital asset representations, including three-dimensional depictions. Accordingly, Securitize's platform, either directly or through its integrated partners,

enables buyers and sellers to visualize rarity assets in virtual, three-dimensional form within the platform environment.

43. Third, Securitize tokenizes and aggregates real-world assets—including equities, fixed income, private credit, alternative assets, and other non-fungible or scarce assets—into on-chain structures that function as digital asset repositories, equivalent to the claimed "raritymine." Securitize issues, manages, and administers tokenized assets across a wide range of asset classes, effectively operating a centralized digital repository of scarce and valuable assets.

44. Fourth, Securitize's platform provides dashboards, investor portals, and trading interfaces that allow issuers (sellers) and investors (buyers) to view tokenized assets, ownership interests, and market data prior to and during trading. Securitize supports distribution, onboarding, and secondary trading, enabling both sides of a transaction to visualize and interact with assets in the platform.

45. Fifth, Securitize creates fractionalized digital tokens representing ownership interests in underlying assets. These fractionalized token units fall well within the definitional scope of the claimed "raritybits." Tokenization benefits described by Securitize include fractional ownership, peer-to-peer transfers, and programmable ownership rights, all of which align with the concept of raritybits as defined in the specification.

46. Sixth, the tokenized assets and fractional ownership units are issued, stored, managed, and traded within Securitize's on-chain platform infrastructure (which is within the definitional scope of raritymine as defined in the '090 specification) from which raritybits are issued and exchanged. Securitize's vertically integrated, regulated stack (transfer agent, broker-dealer, ATS, fund administration) confirms that all asset issuance, custody, and trading occur within the same controlled platform environment.

47.    A claim chart comparing each of the limitations of claim 1 of the '090 patent to the Securitize platform is attached hereto as Exhibit H. Based on the foregoing, Securitize, without authority from LRE, is operating a platform that infringes claim 1 of the '090 patent.

48.    Securitize is currently practicing the '090 patent without authority from LRE and will continue to do so absent injunctive relief from this Court.

49.    The conduct of Securitize has injured and is continuing to injure LRE in its business and property.

50.    The conduct of Securitize is willful in that Securitize is on notice of the '090 patent and its infringement thereof and persists in its unlawful conduct. Securitize was first notified of LRE's patent portfolio by letter dated November 10, 2025, and was provided with detailed claim charts on January 28, 2026. Despite this notice, Securitize has continued to operate its infringing platform.

51.    The conduct of Securitize has caused and threatens LRE with irreparable harm for which LRE has no adequate remedy at law.

### COUNT II—INFRINGEMENT OF U.S. PATENT 8,015,069

52.    LRE incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

53.    LRE's analysis of Securitize's platform demonstrates that the platform infringes at least claims 1, 16, and 23 of the '069 patent.

54.    Claim 1 of the '069 patent recites "[a] method for obtaining, maintaining and controlling an exchange for tangible assets over a global computer network."

55.    Securitize performs a computer-implemented method for obtaining, maintaining, and controlling an exchange for tangible real-world assets, including physical artworks, via a

global computer network. For example, the Strada Digital Masterpieces fund represents ownership interests in tangible art assets obtained, maintained, and exchanged using Securitize's Internet-based platform.

56.    The claim further requires "introducing at least one secure central control manager computer system in secure electronic communication with remote computer systems over the global computer network." Securitize operates a secure, centralized platform infrastructure (cloud servers, smart contracts, investor portals) that securely communicates with remote issuer and investor systems over the Internet.

57.    The claim further requires "programming the central control manager computer system to initially identify, create and store one or more art assets." Securitize's platform does exactly this. By way of non-limiting example, in the Strada Digital Masterpieces offering, Securitize's system digitally identifies and stores data corresponding to physical artworks held by the fund as tokenized securities representing those artworks.

58.    The claim further requires "allowing the central control manager computer system to create and store one or more art asset pools based upon each art asset." The Strada Digital Masterpieces fund constitutes an art asset pool, pooling dozens of physical artworks into a single tokenized investment vehicle created and maintained on Securitize's platform.

59.    The claim further requires "adapting the central control manager computer system to identify, obtain and store appraisal values, authenticity data, and appraisal-related data … and display a dynamic art asset appraisal value." The Strada fund relies on professional appraisal and provenance data (*e.g.*, Winston Art Group). Securitize's platform stores and displays ongoing valuation metrics (NAV) for the art fund, which change over time, constituting a dynamic appraisal value.

60.     The claim further requires "programming the central control manager computer system to generate recommendations relating to buying, selling or maintaining ownership interests." Securitize provides offering materials, investor dashboards, and secondary trading interfaces that guide investors' decisions to buy, sell, or hold ownership interests in the art fund tokens.

61.     The claim further requires "for each art asset pool, creating a pre-defined number of ownership units and an initial ownership price per unit." Securitize issued a fixed number of digital tokens representing fractional ownership in the Strada art fund, each with an initial offering price based on the underlying art portfolio valuation.

62.     The claim further requires "programming the central control manager computer system to create, manage and coordinate ownership interests of each art asset pool." Securitize's computer system manages issuance, ownership records, compliance, transfers, and lifecycle events for the art fund tokens, coordinating ownership interests centrally.

63.     The claim further requires "creating and transmitting an initial price offering communication and securely receiving and transacting orders." Securitize transmitted digital offering communications for the Strada art fund and securely received and processed investor subscription orders through its platform.

64.     The claim further requires "continuously and dynamically identifying and storing art asset pool values and switching ownership units based on triggering events." Securitize continuously tracks valuation and ownership data and enables secondary market trading, whereby ownership units dynamically switch among investors in response to market and transaction triggers.

65.    A claim chart comparing each of the limitations of claim 1 of the '069 patent to the Securitize platform is attached hereto in Exhibit H.

66.    Claim 16 of the '069 patent recites "[a] system for creating and maintaining an art asset exchange over a global computer network."

67.    Securitize provides a system for creating and maintaining an exchange for art assets, as demonstrated by its role in the Strada Digital Masterpieces tokenized art fund, which enables issuance, valuation, ownership tracking, and exchange of interests in physical artworks over the Internet.

68.    The claim further requires "at least one encryptable central control manager computer in secure electronic communication with remote computers." Securitize's secure platform infrastructure communicates with issuer and investor computers over the global network.

69.    The claim further requires the system to "identify, create and store one or more art assets and create at least one art asset pool." The Strada art fund digitally represents and stores multiple physical artworks in a pooled structure on Securitize's platform.

70.    The claim further requires the system to "identify, store and display a dynamic art asset appraisal value." Securitize displays valuation/NAV data for the art fund that changes over time based on appraisal and market factors.

71.    The claim further requires the system to "create a pre-defined number of ownership units and an initial ownership price per unit." Securitize issued a defined number of art fund tokens with an initial offering price tied to the portfolio's value.

72.    The claim further requires the system to "create and transmit an asset marketization communication and securely receive and transact orders." Securitize transmitted offering communications and processed investor orders for the art fund via its secure issuance system.

17

73.     The claim further requires the system to "dynamically identify, store and compare art asset pool values and automatically switch ownership units." Securitize's system continuously tracks token values and facilitates ownership changes through automated secondary trading mechanisms.

74.     A claim chart comparing each of the limitations of claim 16 of the '069 patent to the Securitize platform is attached hereto in Exhibit H.

75.     Claim 23 of the '069 patent recites "[a] secure art asset exchange system in communication with a global computer network."

76.     Securitize provides a secure digital tokenization and trading platform accessible via the Internet that supports exchange-like functions (issuance, ownership transfer, order handling) for tokenized real-world assets including art funds, satisfying the preamble as a secure art asset exchange system.

77.     The claim further requires the system to "generate, characterize and store at least one art asset in a database." The Securitize platform, in offerings such as the Strada Digital Masterpieces tokenized art fund, stores digital representations and metadata of underlying physical artworks and related asset data in its backend systems and on-chain ledgers.

78.     The claim further requires the system to "place each art asset in a pre-defined art asset pool." The Strada art fund effectively constitutes a pooled art asset structure, where approximately 65 artworks are bundled into a single pooled investment vehicle that Securitize's platform manages for token issuance and trading.

79.     The claim further requires the system to "assign a pre-determined number of ownership units to the art asset pool." Securitize issues a defined number of fractional ownership

18

tokens (security tokens) representing interests in the Strada art pool with initial allotments corresponding to the pooled portfolio.

80.    The claim further requires the system to "appraise each art asset and each art asset pool." The Strada art fund's valuation is based on art appraisals and provenance information (e.g., from Winston Art Group), with Securitize's platform capturing and presenting valuation metrics (NAV) for investor consumption.

81.    The claim further requires the system to "place each art asset into an art asset pool for asset marketization." The pooling and marketization of the Strada art assets on Securitize's platform, via issuance and secondary trading, places the assets into a marketed investment structure, satisfying this element.

82.    The claim further requires the system to "generate dynamic market information … based upon a comparison of one or more art asset appraisals with one or more art asset market demands." Securitize's investor dashboard and analytics for tokenized funds provide investors with ongoing dynamic valuation information (*e.g.*, NAV fluctuations reflecting market conditions) that are derived from appraisal and trading demand signals.

83.    The claim further requires the system to "dynamically determine whether any art asset pool is increasing, decreasing or maintaining an approximately constant value." Securitize's system tracks token market activity and valuation measures over time, enabling determination of asset pool performance (increasing, decreasing, stable) via price movement and NAV reporting.

84.    A claim chart comparing each of the limitations of claim 23 of the '069 patent to the Securitize platform is attached hereto as Exhibit H.

85.    Based on the foregoing, Securitize, without authority from LRE, is operating a platform that infringes claims 1, 16, and 23 of the '069 patent.

86. Securitize is currently practicing the '069 patent without authority from LRE and threatens to continue to do so absent injunctive relief from this Court.

87. The conduct of Securitize has injured and is continuing to injure LRE in its business and property.

88. The conduct of Securitize is willful in that Securitize is on notice of the '069 patent and its infringement thereof and persists in its unlawful conduct. Securitize was provided with detailed claim charts for the '069 patent on January 28, 2026. Despite this notice, Securitize has continued to operate its infringing platform.

89. The conduct of Securitize has caused and threatens LRE with irreparable harm for which LRE has no adequate remedy at law.

### COUNT III—INDUCEMENT OF INFRINGEMENT OF THE '090 AND '069 PATENTS (35 U.S.C. § 271(b))

90. LRE incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

91. Third-party asset managers, issuers, funds, and investors (collectively, "Platform Users") — including, without limitation, BlackRock (through its BUIDL fund), Hamilton Lane, the Strada Digital Masterpieces fund, VanEck, and other entities that issue, manage, or trade tokenized assets through the Securitize platform — directly infringe one or more claims of the '090 patent and the '069 patent each time they use the Securitize platform to issue, visualize, manage, or trade tokenized fractionalized ownership interests in real-world assets.

92. Securitize has actively induced, and continues to actively induce, the infringement of the '090 patent and the '069 patent by Platform Users in violation of 35 U.S.C. § 271(b).

93. Securitize has knowledge of the '090 patent and the '069 patent. Securitize was first notified of LRE's patent portfolio by letter dated November 10, 2025, and was provided with

20

detailed claim charts mapping its platform functionality to each asserted claim limitation on January 28, 2026. Despite this knowledge, Securitize has continued to actively encourage and facilitate Platform Users' infringing use of its platform.

94.    Securitize possesses the specific intent to induce infringement by Platform Users. Securitize actively promotes, markets, and instructs Platform Users on how to use the Securitize platform to tokenize, fractionalize, visualize, manage, and trade real-world assets — activities that practice the inventions claimed in the '090 patent and the '069 patent. These affirmative acts of inducement include, without limitation: (a) publishing marketing materials, investor presentations, and website content that instruct Platform Users on how to issue, manage, and trade tokenized fractional ownership interests using the Securitize platform; (b) providing onboarding services, technical integration assistance, and documentation that guide Platform Users through each step of the infringing process; (c) operating a regulated Alternative Trading System (ATS), broker-dealer, and transfer agent infrastructure specifically designed to facilitate Platform Users' issuance and trading of tokenized assets; (d) providing investor dashboards, compliance tools, and portfolio management interfaces that instruct and enable Platform Users to perform each element of the claimed inventions; and (e) publicly announcing and promoting Platform User deployments (*e.g.*, BlackRock BUIDL, Hamilton Lane funds, Strada Digital Masterpieces) as use cases of the Securitize platform's tokenization capabilities.

95.    Securitize knew or was willfully blind to the fact that its inducing activities would result in Platform Users' direct infringement of the '090 patent and the '069 patent. After receiving detailed claim charts demonstrating infringement, Securitize took no steps to modify its platform, discontinue its marketing, or cease encouraging Platform Users' infringing activities. Instead,

Securitize continued to expand its platform's capabilities and actively solicit additional issuers to tokenize assets.

96. As a direct and proximate result of Securitize's inducement, LRE has been injured and continues to be injured in its business and property.

97. The conduct of Securitize constitutes willful inducement in that Securitize has persisted in actively encouraging Platform Users' infringement despite having actual knowledge of the asserted patents and the infringing nature of Platform Users' activities conducted through the Securitize platform.

98. The conduct of Securitize has caused and threatens LRE with irreparable harm for which LRE has no adequate remedy at law.

**COUNT IV—CONTRIBUTORY INFRINGEMENT**
**OF THE '090 AND '069 PATENTS (35 U.S.C. § 271(c))**

99. LRE incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

100. Third-party Platform Users directly infringe one or more claims of the '090 patent and the '069 patent each time they use the Securitize platform to issue, visualize, manage, or trade tokenized fractionalized ownership interests in real-world assets, as described above.

101. Securitize has contributorily infringed, and continues to contributorily infringe, the '090 patent and the '069 patent in violation of 35 U.S.C. § 271(c) by offering to sell and selling to Platform Users within the United States its tokenization platform technology, including its transfer agent services, broker-dealer services, ATS infrastructure, fund administration tools, smart contract protocols, investor onboarding systems, and related components and apparatus (collectively, the "Platform Components").

102. The Platform Components constitute a material part of the inventions claimed in the '090 patent and the '069 patent. Specifically, the Platform Components provide the virtual merchandising mart, simulated trading center, digital asset visualization infrastructure, raritymine repository functionality, and central control manager computer system recited in the asserted claims.

103. The Platform Components are especially made and especially adapted for use in an infringement of the '090 patent and the '069 patent. The Securitize platform is designed, built, marketed, and optimized specifically for the tokenization, fractionalization, visualization, management, and trading of real-world assets, the precise activities covered by the asserted patents.

104. The Platform Components have no substantial non-infringing use. The Securitize platform's core and primary functionality — tokenizing real-world assets into fractionalized digital ownership units, storing and managing those units in a digital repository, enabling visualization by buyers and sellers, and facilitating secondary trading — is the same functionality claimed in the '090 and '069 patents. Upon information and belief, there is no commercially significant use of the Securitize platform that does not practice one or more claims of the asserted patents.

105. Securitize has knowledge that its Platform Components are especially made and especially adapted for use in infringing the '090 patent and the '069 patent. Securitize was provided with detailed claim charts on January 28, 2026, mapping its platform functionality to each asserted claim limitation. Despite this knowledge, Securitize has continued to offer and sell its Platform Components to Platform Users, knowing that such users will employ the Platform Components to practice the patented inventions.

106. As a direct and proximate result of Securitize's contributory infringement, LRE has been injured and continues to be injured in its business and property.

107. The conduct of Securitize is willful in that Securitize has continued to offer and sell its Platform Components to Platform Users for infringing use despite having actual knowledge of the asserted patents and the infringing nature of the use to which the Platform Components are put.

108. The conduct of Securitize has caused and threatens LRE with irreparable harm for which LRE has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

A. Declare, adjudge, and decree that Securitize is liable for direct infringement, inducement of infringement, and contributory infringement of the '090 patent and the '069 patent;

B. Issue preliminary and permanent injunctions restraining Securitize from engaging in any further activities that directly infringe, induce infringement of, or contributorily infringe the '090 patent and the '069 patent;

C. Award LRE damages in accordance with 35 U.S.C. § 284;

D. Declare this case "exceptional" and award LRE increased damages and reasonable attorneys' fees in accordance with 35 U.S.C. § 285; and

E. Award LRE such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Civil Rule 38, Plaintiff respectfully demands a jury trial of all issues triable to a jury in this action.

Dated: June 15, 2026                 Respectfully submitted,


                                     **GELLERT SEITZ BUSENKELL & BROWN LLC**
                                     */s/ Margaret F. England*
                                     Margaret F. England (DE 4248)
                                     1201 N. Orange Street, Suite 300
                                     Wilmington, DE 19801
                                     Telephone: (302) 416-3341
                                     Facsimile: (302) 425-5814
                                     mengland@gsbblaw.com


                                     **KEAN MILLER LLP**
                                     Keith Grady (MO 46757)
                                     BankPlus Tower
                                     909 Poydras St., Suite 3600
                                     New Orleans, LA 70112
                                     (504) 585-3050
                                     keith.grady@keanmiller.com


                                     **Tucker Ellis LLP**
                                     Thomas J. Giacobbe MO #75959
                                     100 S Fourth Street, Suite 600
                                     St. Louis, MO 63102
                                     314.571.4982
                                     314.256.2549 (Facsimile)
                                     Email: thomas.giacobbe@tuckerellis.com


                                     *Attorneys for Liquid Rarity Exchange, LLC*



## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, the foregoing was served *via* the Court's CM/ECF system.

                                     *s/Margaret F. England*
                                     Margaret F. England